UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v.   : | CRIMINAL NO.: 14-0210 (EGS) |
| : | |
| HARRY I. MARTIN JR.,   : | |
| : | |
| Defendant.   : | |

### GOVERNMENT'S MOTION FOR SECTION 5K1.1 DOWNWARD DEPARTURE AND MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorneys, the United States Attorney for the District of Columbia, hereby submits this motion for downward departure pursuant to Section 5K1.1 of the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") and memorandum in aid of sentencing concerning the defendant, Harry I. Martin Jr. ("Martin"). The parties stipulated, and the Pre-Sentence Report ("PSR") agreed, that the defendant's total offense level under the Guidelines is 11 and he falls under Criminal History Category I, which results in a Guidelines sentencing range of 8-14 months. *See* PSR at p. 9, ¶ 51. As discussed further below, based on his substantial assistance in the investigation and prosecution of others, the government moves for a downward departure under § 5K1.1 of the Guidelines and recommends a three-level decrease, resulting in a total offense level of 8 and a sentencing range of 0-6 months in Zone A. Applying the factors in 18 U.S.C. § 3553(a), the government specifically recommends a sentence of three years' probation and a fine of $10,000.

### FACTUAL BACKGROUND

On November 24, 2014, the defendant pleaded guilty to a one count Information, which charged payment of an illegal gratuity, in violation of 18 U.S.C. § 201. In the Statement of Offense, which Martin signed as part of his plea agreement, the parties agreed that was Martin was the founder, President, and Chief Executive Officer of Intelligent Decisions, Inc. ("Intelligent

Decisions"), an information technology company with offices in Ashburn, Virginia.[1]  The vast majority of the business of Intelligent Decisions came from contracts with the United States government.

In January 2009, Martin and Chae Shim, Intelligent Decisions' Director of Acquisition Accounts, Asia/Pacific, learned of an opportunity for Intelligent Decisions to take over two Army subcontracts in South Korea pertaining to an information technology help desk.[2]  Prior to taking over the subcontracts, Martin and Shim traveled to South Korea to meet with In Seon Lim, the civilian Army contracting officer responsible for the subcontracts.[3]  During the trip, Martin and Shim paid for meals, drinks, and entertainment for Lim and others.  Within a few days of the trip, Intelligent Decisions was awarded the subcontracts, which had an initial value of $592,294.40.

Thereafter, from January 2009 through December 2009, Martin and Shim provided things of value to Lim, otherwise than as provided by law for the proper discharge of official duties, for

---

[1] On October 10, 2014, the government filed a one-count Information that charged Intelligent Decisions with payment of an illegal gratuity related to substantially the same conduct as alleged against Martin.  *See United States v. Intelligent Decisions*, 14-cr-0211 (EGS).  In connection with the Information filed against Intelligent Decisions, the government and Intelligent Decisions entered into a Deferred Prosecution Agreement.  As part of the Deferred Prosecution Agreement, Intelligent Decisions, among other things, instituted various enhanced compliance measures and paid a $300,000 monetary penalty.

[2] On November 6, 2014, the government filed a one-count Information that charged Shim with payment of an illegal gratuity related to substantially the same conduct as alleged against Martin.  *See United States v. Chae Shim*, 14-cr-182 (EGS).  Shim's sentencing is scheduled for March 20, 2015.

[3] On July 31, 2014, Lim pleaded guilty to Counts 1 (conspiracy to commit bribery of a public official), 5 (bribery), and 13 (conspiracy to impede the Internal Revenue Service) of an Indictment returned against him in the Eastern District of Virginia.  On October 24, 2014, Lim was sentenced to 48 months' imprisonment by the Honorable Judge Leonie M. Brinkema in the Eastern District of Virginia.  *See United States v. In Seon Lim*, 14-cr-159 (E.D. Va.) (LMB).

and because of officials act performed and to be performed by Lim.  That is, Martin and Shim provided and authorized the provision of meals, entertainment, golf outings, and golf equipment, for and because of the direction of subcontracts to Intelligent Decisions by Lim and preferential treatment provided and to be provided by Lim for Intelligent Decisions with subcontracts awarded through the Army.  At the same time, Martin and Shim authorized John Lee, an employee of Intelligent Decisions, to purchase a new Lexus automobile for In Seon Lim, which was valued at approximately $33,000.[4]  However, a different corrupt contractor, Jin Seok Kim of Saena Tech Corporation ("Saena Tech"), ultimately purchased the Lexus for Lim.[5]  The total value of the things of value provided to Lim by Intelligent Decisions through Martin, Shim, and others at Intelligent Decisions was approximately $7,882.83.

At the same time that Martin and Shim were plying Lim with the things of value, Lim was exerting his official influence to modify the subcontracts awarded to Intelligent Decisions. Between January 2009 and March 2010, in part due to Lim's official influence, the two subcontracts awarded to Intelligent Decisions increased in value from $592,294.40 to $4,572,923.52.  With one exception, Intelligent Decisions provided services to the government commensurate with the costs of those subcontracts.[6]

---

[4] On March 29, 2013, Lee pleaded guilty to a two count Information charging bribery of a public official (Lim) and conspiracy to commit bank fraud.  *See United States v. John Lee*, 13-cr-081 (EGS).  Lee's sentencing is scheduled to take place on May 1, 2015.

[5] On March 21, 2014, the United States and Saena Tech entered into a written Deferred Prosecution Agreement.  The purpose of the Agreement was to allow Saena Tech to demonstrate good conduct and implement certain remedial measures.  On March 24, 2014, as contemplated by the Agreement, the government filed a criminal information charging Saena Tech with payment of a bribe to a public official (Lim), in violation of 18 U.S.C. § 201(b)(1).

[6] The exception related to the conduct of King Everett Johnson ("Johnson"), a former

**ARGUMENT**

I. **The defendant provided substantial assistance in the investigation and prosecution of others.**

The government moves for a downward departure under Section 5K1.1 of the Guidelines. Martin provided substantial assistance in the investigation and prosecution of the following: (1) In Seon Lim, who pleaded guilty to accepting bribes; (2) Chae Shim, who pleaded guilty to paying illegal gratuities; and (3) Intelligent Decisions, which entered into a Deferred Prosecution Agreement and admitted paying illegal gratuities to In Seon Lim.

During his debriefing session in August 2013 and as part of his agreed Statement of Offense, Martin provided historical information on the illegal gratuities paid to the former public official, In Seon Lim. During that initial debriefing session, Martin admitted to facts sufficient to establish the illegal gratuities, accepted responsibility for his actions, and offered no excuses for the conduct. Although Martin's criminal conduct fell well short of what is expected from the leader of a responsible government contracting firm, his complete and matter-of-fact acceptance of his mistakes during the debriefing session is precisely what one would expect from a responsible business leader. Martin, on behalf of Intelligent Decisions, also produced records, including emails, between himself and his co-conspirators. Martin's information and documents directly implicated Lim, Shim, himself, and Intelligent Decisions in the illegal conduct. Martin's

---

employee of Intelligent Decisions. On March 29, 2013, Johnson pleaded guilty to a one count Information, which charged conspiracy to commit wire fraud, in violation of 18 U.S.C. § 371. *See United States v. King Everett Johnson*, 13-cr-082 (EGS). Johnson's guilty plea stemmed from his conduct while an employee of Intelligent Decisions in submitting false invoices to the government totaling $124,163.30. On November 13, 2014, this Court sentenced Johnson to three years' probation, with the first 180 days on home confinement. Other than Johnson and John Lee, there is no evidence that anyone else at Intelligent Decisions was aware of the false invoices.

cooperation was brought to the attention of Lim through Lim's counsel. Because of complications arising from negotiations over the Deferred Prosecution Agreement with Intelligent Decisions, Martin entered his plea agreement after Lim had already pleaded guilty. Nevertheless, Martin's willingness to testify against Lim contributed substantially to Lim's decision to plead guilty.

In addition, Martin's cooperation substantially assisted the government's investigation and prosecution of Chae Shim and Intelligent Decisions. During his initial debrief, Martin admitted to facts sufficient to demonstrate that Chae Shim had also paid illegal gratuities to Lim to obtain and retain business for Intelligent Decisions. Shim, who had previously attempted to minimize his own conduct, changed course quickly after learning of Martin's admissions, admitted his own criminal conduct, and agreed to cooperate in the government's then on-going investigation of Lim. Martin's admissions also were used to obtain a Deferred Prosecution Agreement with Intelligent Decisions, which has paid a $300,000 monetary penalty and instituted remedial measures as part of the agreement.

Based on this substantial assistance, the government recommends a three-level downward departure, resulting in a total adjusted offense level of 8 and a Guidelines sentencing range of 0-6 months (Zone A).

Martin also provided some assistance to criminal investigators in October 2010 during an earlier investigation by the United States Army into Lim's relationship with Intelligent Decisions. Shortly before, and then again after, Intelligent Decisions lost its subcontracts in March 2010, Martin and others at Intelligent Decisions self-disclosed certain information to Army officials and the Army's Criminal Investigative Division (CID) related to preferential treatment provided by

Lim to certain subcontractors.[7]  As part of those self-disclosures, Intelligent Decisions produced some documents related to its dealings with Lim, particularly an effort by Lee, Intelligent Decisions's then-former employee, to purchase a new Lexus automobile for Lim.  Martin was interviewed by an Army CID agent in October 2010 as part of the initial self-disclosure.  Although neither Martin nor Intelligent Decisions self-disclosed to the Army CID investigators the full extent of the relationship between Intelligent Decisions and Lim, including the assorted things of value provided to Lim, they were responsible for and responsive to Army CID's investigation of Lim, which provided Army CID with an earlier opportunity to disrupt Lim's criminal network.  The lead Army CID agent responsible for the investigation, however, was reassigned to Afghanistan later in 2010.  As a result, Army CID's investigation of Lim was dormant until the Federal Bureau of Investigation ("FBI") learned from another government contractor, Nova Datacom, about similar allegations against Lim in or around June 2012.  The subsequent investigation led by the FBI revealed the full extent of the things of value provided by Intelligent Decisions to Lim, which led ultimately to the charges against Martin and others at Intelligent Decisions.

**II.     Based on the sentencing factors in 18 U.S.C. § 3553(a), the government recommends a sentence of probation.**

    **A.     The applicable advisory Guidelines range should be 8-14 months.**

---

[7] By that time, Intelligent Decisions's contracts had been taken over by another corrupt subcontractor, Avenciatech, Inc. ("Avenciatech").  On November 9, 2012, Thomas Kwon, the co-founder and Chief Financial Officer of Avenciatech, pleaded guilty to a two count Information charging bribery of a public official (Lim) and bank fraud.  *See United States v. Oh Sung Kwon, a/k/a Thomas Kwon*, 13-cr-181 (EGS).  Kwon was sentenced by this Court to 37 months' imprisonment.

The Supreme Court has declared that, in terms of determining an appropriate sentence, "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007) ("a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range"). Although advisory, the Guidelines assure some measure of uniformity in sentencing, fulfilling a key Congressional goal in adopting the Sentencing Reform Act of 1984. Reference to the Guidelines, while carefully considering the factors set forth in 18 U.S.C. § 3553(a) particularly relevant to an individual defendant, minimizes the disfavored result of basing sentences on the luck of the draw in judicial assignments. Therefore, the Supreme Court has held that "district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall*, 552 U.S. at 50 n.6.

Here, the parties stipulated to the following applicable Guidelines:

| | | |
|---|---|---|
| § 2C1.2(a)(2) | Base Offense Level | 9 |
| § 2C1.2(b)(1) | More than one gratuity | 2 |
| § 2C1.2(b)(2) | Value of gratuities more than $5000 | 2 |
| § 3E1.1(a) | Acceptance | (2) |
| Total | | 11 |

The PSR agreed with the parties' stipulated Guidelines range.

**B.     The nature and circumstances of the offense support a sentence of probation.**

A Guidelines sentence at an offense level 11 (pre-departure) is reasonable in light of nature and circumstances of the offense of conviction. This is a straight-forward case of illegal gratuities. Prior to January 2009, the defendant and his company had no relationship with the public official. In order to obtain the subcontracts, the defendant went to Korea to "wine and dine" the public official. After obtaining the subcontracts, for a nearly one year period, from January 2009 through December 2009, the defendant and his company knowingly plied the public official with meals, drinks, golf, golf equipment, and various forms of entertainment to obtain and retain business. The gifts, in turn, led in part to increases in the value of the subcontracts from $592,294.40 to $4,572,923.52. Although no one could realistically assert that less than $8000 in gratuities was wholly responsible for nearly $4 million in additional business, there is no dispute that the gifts were intended to obtain and retain such business. The gifts served those business purposes, at least until a more corrupt contractor, Thomas Kwon, essentially outbid Intelligent Decisions for Lim's crooked services. Not surprisingly, after Lim stopped providing business to Intelligent Decisions, the company stopped providing things of value to him.

Although Martin was the Chief Executive Officer at Intelligent Decisions at the time of the offense, the parties and the Probation Office agree that he was not a leader, organizer, manager, or supervisor of the illegal gratuity scheme. Nevertheless, his status as the CEO is certainly responsible for the "tone at the top" that he set regarding his company's interaction with public officials, particularly with Lim in Korea. To his credit, his company's illegal conduct appears to be limited to its dealings with Lim in Korea; the government has no evidence that Intelligent Decisions paid illegal gratuities to other public officials in the United States or abroad. For some

reason, however, he allowed himself, his company, and certain of its employees to play fast and loose with the rules in trying to build the company's footprint in Korea through its relationship with Lim.  He is the fourth former employee of Intelligent Decisions to plead guilty to a felony based on a corrupt relationship with the former public official, In Seon Lim.   This is not to say that the defendant is responsible for the criminal acts of his former employees.   He is responsible for his felony conviction, and they are responsible for their convictions.   But the defendant's tone at the top in Korea, which appeared to be significantly different from the stricter tone he set related to his company's domestic government contracting business, was a contributing factor to his fall. Such conduct falls squarely within the heartland of the Guidelines for illegal gratuities.

      **C.**      **The history and characteristics of the defendant support a sentence of probation.**

The history and characteristics of the defendant demonstrate that a Guidelines sentence at an offense level 11 (pre-departure) is reasonable in light of the defendant's past good conduct and lack of any criminal history.  After obtaining his high school degree in 1976, the defendant attended two universities but did not obtain an undergraduate degree.  Instead, the defendant began working in the field of information technology, established his own company, Intelligent Decisions, in 1988, and worked to grow his company to over 600 employees by 2014.   Although the defendant has a prior misdemeanor conviction for unregistered ammunition in 1991, *see* PSR at ¶ 69, he has no criminal history points.   He has no history of mental illness or substance abuse.

      **D.**      **The need for the sentence imposed to reflect the seriousness of the offense and to afford adequate deterrence support a sentence of probation.**

Here, a Guidelines sentence at an offense level 11 (pre-departure) is also reasonable in light of the need for the sentence imposed to reflect the seriousness of the offense and to afford general

9

deterrence. Paying illegal gratuities to a public official is a serious offense. That said, the relatively short time frame for the offense conduct (less than one year), the relatively small amount of the gratuities (less than $8000), and the lack of any criminal history points suggest that specific deterrence is not an issue here. Although general deterrence of other contractors is an important consideration, the government submits that a combination of probation, a fine, and the likely debarment of the defendant from government contracting are nevertheless appropriate here. The defendant will carry with him for the rest of his life the stigma of being a convicted felon and having harmed the reputation of the company that he had founded and built. The felony conviction will also likely result in the defendant being debarred from participating in government contracts for a significant period of time. The government submits that such penalties will provide a sentence sufficient, but not greater than necessary, to comply with these factors under 18 U.S.C. § 3553(a).

### E. The kinds of sentences available.

The maximum statutory term of imprisonment here is two years. If the Court grants the government's motion for a downward departure, and agrees with the government's recommendation to sentence the defendant at an adjusted Guidelines offense level of 8, which is in Zone A of the Sentencing Table, then a sentence of probation is authorized. *See* U.S.S.G. § 5B1.1(a)(1). According to the PSR, the defendant has the ability to pay a fine in addition to restitution. *See* PSR at p. 24, ¶ 131. Given the defendant's position as the former CEO of Intelligent Decisions, the government recommends a sentence at the high end of the advisory fine range of $10,000.

**F.      The sentencing range established by the Guidelines.**

As discussed above, the government maintains that the appropriate adjusted offense level is 11 (pre-departure).  With a Criminal History category I, which the PSR has recommended, the resulting advisory sentencing range under the Guidelines is 8-14 months.  As stated above, the government recommends a three-level downward departure under USSG § 5K1.1 based on the defendant's substantial assistance, for an adjusted total offense level of 8 (0-6 months).

**G.      Any pertinent policy statement issued by the United States Sentencing Commission.**

As stated above, the government has moved for a three-level downward departure under Section 5K1.1 of the Guidelines.

**H.      The need to avoid unwarranted sentencing disparities among defendants with similar records.**

A Guidelines sentence at an offense level 11 (pre-departure) would also be reasonable in light of the need to prevent disparities between the defendant and defendants in similar cases.  In addition, a post-departure sentence of probation would be reasonable in light of the resulting Guidelines (0-6 months).

In addition, twenty individuals have now pleaded guilty as part of this investigation. Given the nature and circumstances of the defendant's offense of conviction (illegal gratuities), and considering the relatively small amount of the illegal gratuities (less than $8000), the government does not consider this defendant to be similarly situated to the other defendants who have been sentenced as part of this investigation.  Nevertheless, for the Court's convenience, set forth below are the sentences for other defendants in this investigation:

11

| Defendant | Offense Level and Range Per Plea Agreement (Pre-5K) | Substantial Assistance in the Investigation and Prosecution of Others | Actual Sentence | % Off Time to be Served (from Bottom of Range) |
|---|---|---|---|---|
| Michael Alexander | 31 (108-135) | Harold Babb; Kerry Khan | 72 months | 33% |
| Harold Babb | 33 (135-168) | Kerry Khan | 87 months | 36% |
| Alex Cho | 35 (188-235) (Plea)<br><br>36 (210-262) (PSR) | Michael Alexander; Harold Babb; Min Cho; Larry Corbett; Kerry Khan; Lee Khan; Nazim Khan; Thomas Kwon; In Seon Lim;  Nova Datacom; Nick Park | *106*<br><br>*(government recommendation, pre-Smith departure)* | 44% (plea)<br><br>50% (PSR) |
| Larry Corbett | 23 (46-57) | Kerry Khan; Chae Chong | 27 months | 41% |
| Theodoros Hallas | 19 (30-37) | Alex Cho; Nova Datacom | 18 months | 40% |
| King Everett Johnson | 13 (12-18) | In Seon Lim | 180 days home confinement | 75% |
| Kerry Khan | 39 (262-327) | Harold Babb; Min Cho; Larry Corbett; Lee Khan; Nazim Khan; In Seon Lim | 235 months | 10% |
| Thomas Kwon | 28 (87-108) | Alex Cho; Min Cho; Nova Datacom; King Everett Johnson; In Seon Lim; Others | 36 months | 59% |
| In Seon Lim | 29 (87-108) | Company G; and Employee G-1 | 48 months | 45% |
| Robert McKinney | 25 (57-71) | Kerry Khan; Nazim Khan | 33 months | 42% |
| James Miller | 33 (135-168) | Harold Babb; Kerry Khan | 70 months | 48% |
| Nick Park | 21 (46-57) | Min Cho; Nova Datacom; John Lee; In Seon Lim | 24 months | 48% |

| Helen Woo | Not Applicable (D.C. Guidelines not applicable to misdemeanors) | In Seon Lim | 2 years' probation | N/A |

**I.    The need to provide restitution.**

The parties and the Probation Office agree that restitution is not applicable here.

### CONCLUSION

For the foregoing reasons, the government respectfully moves for a downward departure under U.S.S.G. § 5K1.1, with a recommended downward departure of three levels, resulting in an adjusted total offense level of 8 (0-6 months).  As a result, the government specifically recommends a sentence of three years' probation and a fine of $10,000.

        Respectfully submitted,

        RONALD C. MACHEN JR.
        United States Attorney
        For the District of Columbia


By:    _____/s/_____
        MICHAEL K. ATKINSON
        ANTHONY D. SALER
        Assistant United States Attorneys
        Fraud and Public Corruption Section
        555 4th Street, N.W.
        Washington, D.C.   20530
        (202) 252-7817 (Atkinson)
        Michael.Atkinson2@usdoj.gov

Dated: February 13, 2015