UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. 14-210 (EGS) |
| | ) | |
| HARRY I. MARTIN, JR., | ) | |
| | ) | |
| Defendant. | ) | |

HARRY MARTIN'S SENTENCING MEMORANDUM

Defendant Harry I. Martin, Jr. ("Martin") respectfully submits this memorandum in aid of his sentencing by the Court on March 6, 2015.

On one level, Martin's sentencing would appear to be an easy proceeding for the Court. Neither party has any material disputes with the Pre-Sentence Report ("PSR"), and the parties do not have any real factual disputes between each other. The facts are largely established and only the consequences of those facts remain to be determined.

On another level, though, it is the precise determination of those consequences that makes this proceeding so difficult. This Court has been extraordinarily understanding of sentencing consequences over the years in general, and has been specifically cognizant of them as well in the context of this investigation. For example, during a hearing in September in the Saena Tech case, the Court noted that defendants who come before the Court to be sentenced "will

1

forever have a criminal record,"[1] and that record "will follow them for the rest of their lives," Saena Tech Tr. at 8, impacting their professional "license[s]" and causing them "to have to explain certain things." Id. at 16.  This Court truly knows the consequences of a felony conviction better than anyone.  Martin is about to experience those very consequences first-hand.

### Who Is Harry Martin?

Martin is a District of Columbia area native.  His father was a successful local ob/gyn doctor; his mother was a music teacher.  Martin attended St. John's College High School, and later Howard University.  He was an Electrical Engineering and Math major, but never completed his degree at Howard.  Instead, like many others in the 1980s, Martin stopped studying and began working in the then-exploding computer industry.

From 1983-1987, Martin worked at a number of jobs in the information technology field.  He found his niche, and thereafter started his own company, Intelligent Decisions ("ID").  Over the next three decades, Martin built ID into a hugely successful computer services and hardware company.  He headquartered the business originally in Northern Virginia, but the company now has offices in Florida, Hawaii, Alabama, Utah, Texas, Idaho, Arizona, California, Ohio, Maryland, Minnesota and Dubai.  ID currently has a number of prime contracts with U.S. Government agencies, including the General Services Agency, the

---

[1] United States v. Saena Tech, No. 14-066, Tr. 9/5/14 at 16 ("Saena Tech Tr.").

National Institute of Health, the National Security Agency, the National Geospatial - Intelligence Agency, the Department of Veterans Affairs, the Department of Energy, the Department of Labor, the Department of Justice, the FBI, the Department of Commerce, the United States House of Representatives and the Administrative Office of United States Courts.

As the attached letter from longtime ID employee Edith Hughes demonstrates, Martin is an approachable and empathetic boss. He prides himself on personal relationships with the company's employees, and trying to help those in trouble. He is a rare, caring corporate employer. Hughes notes that he "can often be found crying after bad news has been received regarding an employee or employee family member." Contrary to so many top-down institutions these days, Martin values teamwork above all at ID. It is no wonder, therefore, that ID has been voted one of the "Best Places to Work" in the 2012 Washington Business Journal and the 2009 Washingtonian magazine. The company has won numerous other awards over the years for its work as well.

In addition to being a successful entrepreneur, Martin is also a family man and a devoted father. As the attached letters from Bob Okun, Coach Reginald Kitchen and George Light reveal, Martin has always been personally involved in his kids' activities and, as a result, has become charitably involved in helping others less fortunate benefit from those activities as well. According to Coach Kitchen, Martin "has personally made it possible for hundreds of kids to attend our

[5on5 Basketball] Academy with his financial support" in an "effort[] to help these kids." Bob Okun similarly describes how Martin "was an early and consistent supporter of the ThanksUSA charity to award college scholarships to military families. Harry has a deep commitment to the service provided by the members of our military, as well as the sacrifices endured by they and their families. As a result, Harry subsequently decided to join our board of directors and he has been an outstanding board member."

Finally, Harry Martin is a patriot. As the attached letter from Retired Four Star Army General Johnnie Wilson reveals, Martin "cares deeply about 'God and country.'" He has gone with General Wilson, without any fanfare, to visit our injured soldiers at Walter Reed and to bring them small gifts of appreciation for their service. And as the attached letter from 28-year NSA veteran Frank Derwin reveals, Martin "spent considerable time, energy and resources working with the NSA to build a substantial national security asset - a cyber security capability unmatched [in] the private sector - to assist the agency in its efforts," and he did so without any "concern of making a profit from this effort; his only goal was to help the country."

The Harry Martin who comes before this Court for sentencing is, thus, a caring and successful businessman, a family man and devoted father, a substantial charitable giver and a true patriot. As the attached letters attest, he is "one of the nicest, kindest and helpful people;" he "is all about putting integrity before profit

and about putting the national interest ahead of the private interest;" he "is a kind hearted and compassionate man;" he "has a deep commitment to the service provided by the members of our military, as well as the sacrifices endured by they and their families; and he "is a man with the highest level of integrity and honesty."

## What Did Harry Martin Do?

As the Court is aware, Martin has pled guilty to a single count of giving an illegal gratuity to former Army Officer In Seon Lim.  The gratuities provided to Lim were almost exclusively of the "travel and entertainment" variety.  Martin and others at ID "wined and dined" Lim on a number of occasions while he was the Chief Contracting Officer on a relatively small ID subcontract with the army in Korea.  There was no excuse for this extravagance on Lim's behalf, but it is what it is.  Fortunately, Martin and ID never provided Lim with "bags of cash" the way others involved with him did.

The record of this investigation indicates that ID began work on this subcontract in January 2009.  By the Fall of 2009, Martin became fed up with Lim's conduct and in December 2009 he tried "to do the right thing" by engaging Gen. (Ret.) Pete Proctor to report Lim's misconduct to the Army.  General Proctor subsequently met with James Podolak, Director of the Army CIDC Major Procurement Fraud Unit, and he believes that Podolak opened an investigation of Lim.

When Martin directed ID to report Lim to the Army, he knew - as anyone in his position would - that the authorities would end up investigating the entirety of ID's relationship with Lim.  Nonetheless, Martin directed ID to cooperate fully with that investigation: to produce all documents requested and to make available all witnesses wanted for interview.  Martin himself was interviewed by the ARMY CID and later by the Assistant United States Attorney Michael Atkinson, who concluded that he provided a truthful interview which aided that office's investigation.  Other ID witnesses were cooperatively interviewed as well.

In response to the findings of the investigation, Martin directed ID to implement new training and compliance policies designed to prevent the reoccurrence of any violations in the future.  The company also appointed a new internal compliance officer and retained a highly qualified outside compliance advisor.  Martin also personally implemented a "tone from the top" of scrupulous compliance with the travel, entertainment and gift restrictions on interacting with government officials.

ID had no history of any criminal conduct before this investigation, and it has had none since.  So what happened here?  We believe that AUSA Atkinson has described it fairly when he said that "ID was not a rotten company, but it found itself in a rotten relationship."  The Court is well aware of the many truly "rotten" companies that this investigation uncovered, companies set up and dedicated from the outset to paying hundreds of thousands of dollars in cash to Lim for his favors.

By contrast, ID found itself as a legitimate company in a relationship with Lim who repeatedly requested the "royal" treatment from the company and for approximately ten months or so the company regrettably complied with many of Lim's requests. Then as Lim's demands became increasingly aggressive, ID had enough of this "rotten relationship" and Martin directed General Proctor to report Lim's conduct to the Army.

### What Sentence Should Be Imposed on Harry Martin?

The United States Attorney's Office has moved for a downward departure of three levels on Martin's sentencing guideline score because of his and ID's extensive and timely cooperation with this investigation. We certainly agree that such a departure should be granted, which would take Martin down to Zone A of the guidelines where - as recommended by the prosecutor - he could receive a sentence of probation. In order to encourage future cooperation in sensitive Government investigations, cooperators need to be publicly "rewarded" for coming forward. Granting the recommended downward departure and sentence of probation will further that policy interest.

In addition to the factors recited by the United States Attorney's Office in making the recommendation in its sentencing memorandum, an analysis with which Martin largely agrees, this Court should also take into account the other devastating real world consequences of the conviction in this case on Harry Martin. Martin came into this investigation as a respected family man, businessman,

philanthropist and citizen patriot with no real criminal history.  He is going to leave it as a convicted felon, triggering all of the sensitivities recognized by this Court in the quotes set forth at the outset of this pleading.  As a result of his felony conviction, Martin is going to lose his security clearance which - as Frank Derwin points out in his letter - will have the devastating effect of preventing Martin from continuing his work in top secret national security matters.  As a result of his felony conviction, Martin is also going to lose his ability to sit on any public company or charity boards which - as Bob Okun points out in his letter - has already caused the ThanksUSA charity for military family members to lose his service.  As a result of his felony conviction, Martin is also going to have to give up some or all control of ID in order to avoid that company's suspension or debarment from government contracting which - as Edith Hughes points out in her letter - is like asking Martin to give up his life's work AND his family.

    For some people, the consequences of a felony conviction are more devastating than others.  Harry Martin is one of those people.  The effect of this felony conviction cannot be overstated.  It is a personal punishment in the extreme, a personal hell, even without any sentence.

    Harry Martin has admitted what he has done wrong, and he has even tried to make amends for that wrong by reporting Lim's misconduct to the Army and cooperating in the investigation against him.  As this Court noted at the <u>Saena Tech</u> hearing quoted above: "people make mistakes.  People do stupid things for a host

of reasons . . . they make mistakes that will follow them for the rest of their lives." Saena Tech Tr. at 8.  Harry Martin has made those mistakes and done those stupid things, but as the record before this Court reveals he has done so so much more right in his life as well.  The fact that his conduct in this case is "out of character" and an "aberration" needs to be factored into fashioning an appropriate sentence even lower than that recommended by the Government.

     Finally, with respect to avoiding sentencing disparities, we must mention the case of Mr. Kim, the Chief Executive Officer of Saena Tech.  Despite presiding over a truly "rotten company," which funneled hundreds of thousands of dollars in cash to Lim, Kim escaped prosecution entirely in this case.  This happened literally within weeks of Martin, the Chief Executive Officer of an otherwise good company, having to resolve his and his company's conduct in providing less than $8,000 in travel, entertainment and gifts to Lim through the entry of a personal felony plea.  This is not a "sentencing disparity" per se, of course, because Kim was never sentenced.  But it is, we submit, a point of apparent unfairness and unequal treatment compared to others involved in this investigation - as this Court seemed to recognize at the <u>Saena Tech</u> hearing - which can be taken into account in this Court's ultimate sentence here.

     If the past is prologue, Harry Martin will never be before this Court again.  A very painful lesson has been learned.  A very severe penalty has been exacted.  Upon due consideration of the foregoing in light of the entire record in this case, it

is in the interests of justice that Martin be sentenced to a term of six months unsupervised probation. Such a sentence would be sufficient but not greater than necessary to adequately address all of the factors outlined in 18 USC Section 3553 (a). Nothing more is required.

Respectfully submitted,

_____/s/_____
STEPHEN L. BRAGA
(D.C. BAR NO. 366727)
Law Office of Stephen L. Braga PLLC
3079 Woods Cove Lane
Woodbridge, VA 22192
(703) 623-2180
bragalaw@gmail.com

February 20, 2015          Counsel for Harry I. Martin, Jr.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and accurate copy of the foregoing motion and attachments was served on all counsel of record through the Court's ECF filing system this 20th day of February 2015.

_____/s/_____
STEPHEN L. BRAGA